**Timothy P. DEMPSEY, Appellant,**

v.

**Father Robert JOHNSTON, Roman Catholic Archdiocese of St. Louis, et al., Respondents.**

**No. ED 92624.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 27, 2009.

Application for Transfer to Supreme Court Denied Dec. 7, 2009.

Application for Transfer Denied
Jan. 26, 2010.

Jeffrey R. Anderson, M. Susan Carlson, St. Paul, MN, Kenneth M. Chackes, M. Susan Carlson, St. Louis, MO, Rebecca M. Randles, Kansas City, MO, for Appellant.

Edward M. Golderhersh, Bernard C. Huger, David P. Niemeier, St. Louis, MO, for Respondent.

ROY L. RICHTER, Judge.

Timothy Dempsey ("Plaintiff") appeals the trial court's grant of summary judgment in favor of the Roman Catholic Archdiocese of St. Louis ("Archdiocese") and Father Robert Johnston ("Priest"). Finding no error, we affirm.

## I. BACKGROUND

Plaintiff, born on March 18, 1964, was an altar boy at Sacred Heart Parish in Valley Park, Missouri, where he served masses with Priest. Plaintiff alleges that Priest sexually abused him on four separate occasions between 1977 and 1978 when Plaintiff was thirteen to fourteen years old and in the eighth grade. Plaintiff claims that two incidents of abuse occurred at Priest's lake house in Hillsboro, Missouri, one at the Sacred Heart Parish Rectory, and another at a hotel during a road trip to Ft. Lauderdale, Florida. According to Plaintiff, the sexual abuse consisted of masturbation and oral sex.

Plaintiff did not reveal the abuse to anyone until he told his wife in November 2002. Plaintiff admits that he always remembered the abuse and knew it was wrong, but states he kept it secret because he was embarrassed, ashamed and scared, and did not think anyone would believe him.

On December 16, 2004, at age 40, Plaintiff filed a ten-count petition against the Archdiocese and Priest based on the sexual abuse he alleges occurred in 1977 and 1978.

In April 2007 the Archdiocese filed a motion to dismiss all counts against it except Count X, Intentional Failure to Supervise Clergy ("failure to supervise"). The trial court granted the motion in its entirety and left only the failure to supervise claim pending against the Archdiocese.

In April 2008, one year after it filed the motion to dismiss, the Archdiocese filed a motion for summary judgment regarding Plaintiff's remaining failure to supervise claim and argued that it was barred by the statute of limitations. Priest likewise filed a motion for summary judgment in April 2008 wherein he alleged that the applicable statute of limitations barred all of Plaintiff's claims against him.

On December 22, 2008, the trial court granted the Archdiocese's and Priest's motions for summary judgment on the basis that Plaintiff's claims were barred by the statute of limitations.[1] Plaintiff appeals.

## II. DISCUSSION

In his sole point on appeal, Plaintiff argues that the trial court erred in granting summary judgment for the Archdiocese and Priest based on the statute of limitations. We disagree.

Appellate court review of summary judgment is de novo. *ITT Commercial Fin. v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc.1993). We view the evi-

---

1. The trial court relied on the same facts and legal analysis in granting both the Archdio-cese's and Priest's motions for summary judgment.

dence and all reasonable inferences in the light most favorable to the party against whom judgment was entered. *Id.* Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

The statute of limitations is an affirmative defense, and a party who moves for summary judgment on that basis bears the burden of showing that the statute bars the plaintiff's claims. *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 580 (Mo. banc 2006). "Where relevant facts are uncontested, the statute of limitations issue can be decided by the court as a matter of law." *Id.* at 585.

The parties do not disagree regarding the various statutes of limitation that apply to Plaintiff's claims, or that section 516.170 RSMo 2000 [2] operated to toll Plaintiff's claims until he reached age twenty-one.[3] They do dispute, however, when Plaintiff's causes of action began to accrue thereafter.

Section 516.100 provides that a cause of action accrues "when the damage resulting therefrom is sustained and is capable of ascertainment." In *Powel v. Chaminade*, the Missouri Supreme Court stated that damages are capable of ascertainment and the statute of limitations begins to run when "the evidence [is] such to place a reasonably prudent person on notice of a potentially actionable injury." 197 S.W.3d at 582. The Court emphasized that the test is an objective one and that the issue

is "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Id.* at 584.

Plaintiff does not proffer even a general timeframe during which he believes his injuries were capable of ascertainment. He essentially argues that, even though he always remembered the abuse and knew it was wrong, he did not know he had suffered substantial injuries as a result. According to Plaintiff, embarrassment, fear, and confusion about the abuse "are not the kind of damages that would have put [P]laintiff on inquiry notice that he may have a legal claim against [Priest] or the Archdiocese." Plaintiff asserts that mere knowledge that an act of sexual abuse is wrong is insufficient to trigger the statute of limitations.

The Archdiocese and Priest argue that the statute of limitations began to run when Plaintiff turned twenty-one on March 18, 1985. They assert that, under *Powel*'s objective standard, Plaintiff's damages were capable of ascertainment at that time because Plaintiff always remembered what had happened to him and knew it was wrong. According to Archdiocese and Priest, such circumstances were sufficient to place a reasonable person on inquiry notice of a potentially actionable injury.

We agree with Priest and the Archdiocese that Plaintiff's damages were capable of ascertainment when he reached age twenty-one. Unlike the plaintiff in *Powel*, Plaintiff does not allege repressed memo-

---

**2.** Unless otherwise indicated, all statutory references are to RSMo 2000.

**3.** The general five-year statute of limitations contained in section 516.120(4) applies to Plaintiff's claims for failure to supervise, breach of fiduciary duty, intentional infliction of emotional distress and negligence. Subsection (5) of that section imposes a ten-year

statute of limitations on Plaintiff's two fraud claims. Finally, section 537.046.2 states that Plaintiff must bring his claim for childhood sexual abuse within ten years of attaining the age of twenty-one, or within three years of the date on which he discovers that his injuries were caused by sexual abuse, whichever later occurs.

ry. In his responses to the Archdiocese's requests for admission, Plaintiff admitted that he did not repress his memories of the abuse and that he has always remembered it. Plaintiff stated in his deposition testimony that he began avoiding Priest when he turned fifteen in order to protect himself from further abuse. Finally, Plaintiff indicated that he kept the abuse secret because he feared no one would believe him. Plaintiff's memories of the sexual abuse were sufficient to place a reasonably prudent person on inquiry notice of a potentially actionable injury. *See State ex rel. Marianist Province of U.S. v. Ross,* 258 S.W.3d 809, 811 (Mo. banc 2008) (stating that even though plaintiff did not remember the sexual details of the abuse, the conduct that he always remembered was sufficient to "place a reasonably prudent person on notice of a potentially actionable injury.").

Plaintiff attempts to distinguish his case from *Graham v. McGrath,* 243 S.W.3d 459 (Mo.App. E.D.2007) by positing that "evidence of disclosure to others" was crucial to *Graham*'s holding. *Graham,* however, did not require disclosure to others in order to trigger the statute of limitations. *Graham* simply held that the statute of limitations began to run in 1995 when plaintiff began to have knowledge of the facts constituting the abuse and understood that he had been a sexual abuse victim. 243 S.W.3d at 463. That plaintiff disclosed the abuse in 1995 to his mother, wife and friend was merely further evidence that plaintiff had, at that time, facts sufficient "to place a reasonably prudent person on notice of a potentially actionable injury." *Id.*

Plaintiff has always had knowledge of the facts constituting the abuse and has always known that he was a sexual abuse victim. His damages, therefore, were sufficient to place a reasonably prudent per-

son on notice of a potentially actionable injury. Section 516.170 operated to toll Plaintiff's claims until March 18, 1985 when he reached the age of twenty-one years, and at that point they became capable of ascertainment. Because Plaintiff did not bring suit until 2004, long after the applicable statutes of limitation had expired, the trial court did not err in granting the Archdiocese's and Priest's motions for summary judgment. Point denied.

### III. CONCLUSION

The judgment is affirmed.

KURT S. ODENWALD, P.J., and GEORGE W. DRAPER, III, J., concur.